The next matter is 419-0354. Pardon me, this is Remette v. Cozad, et al. I think most of you were in the room when Justice Steigman advised that we regret to inform you that Justice Connick is unable to attend today. However, he will be reviewing the audio and be taking part in our deliberation. Mr. Beckett? Good morning, ma'am. I'm pleased to co-preside with Justice Kavanaugh, Justice Harris, and Justice Connick when you hear this. Plaintiff Jim Vermette is a long-time investment officer for a premier investment firm in Central Illinois, Cozad Asset Management. He has had various forms of compensation over the 30-plus years that he has been employed there. He brought this lawsuit because of his dissatisfaction with his compensation under a 2007 employment agreement. He had four theories of recovery that were presented in his complaint about what he claimed was a breach of his employment contract, and the lawsuit was dismissed. There was an opportunity to replead on a theory related to, I think, production bonus, but the plaintiff, through counsel, decided that we would accept the pleading that was on file and accept the court's ruling to get a final appealable order in this case. And so since it is an order dismissing the case, plaintiff is entitled to the best inferences he can get from the well-pleaded facts in the case and believes that he has properly stated a cause of action in each of the theories that he presented. The first theory I want to address is the TIAA farmland commitment, which is paragraph 4A of this contract. And the plaintiff contends that Cozad, I'll just refer to him by Cozad if that's all right with you, Cozad has failed to issue, Jim Vermitt, ten shares of capital common stock for each million dollars of new farmland commitments made by TIAA-CREF since 2007 pursuant to the terms of that employment agreement. His contention is that the provision about these ten shares is not tied to whether or not Cozad is actually receiving commission of fees from those farmland commitments of TIAA-CREF. And I realize that's an odd argument in some sense, because that means that Cozad would be compensating in the form of shares for Vermitt for farmland assets that were coming to TIAA-CREF after Cozad was no longer managing those accounts. Vermitt's position is that he had been working on this TIAA-CREF investment package for a long time and that he was looking for a method of compensation that justified his past efforts. And what he wanted, he realized he was going to be able to get, to the extent they paid fees and commissions, what are called the TC fees, which is the first part of paragraph 4A. He was going to be able to get those because he could calculate those as they came in. But that there was a risk because of the way he had been treated that they would get rid of that aspect of the business and he would lose out. He would be the party that had the most to lose if the farmland investment portfolio of TIAA-CREF left the business. And so the language inserted in the business in the 4A contract was, for so long, make sure I say it right now, for so long as there is any business relationship, any form of business relationship. Now, he considered that a safety valve because that meant that if Cozad decided that they wanted to take that farm management portfolio of TIAA-CREF and move it away, that they would have to do one of two things. One, they'd have to completely stop doing business with TIAA-CREF. Or two, they'd have to come back to the table with him because of these shares of common stock, capital common stock that he would be entitled to. Well, in fact, Cozad did neither. They went ahead and sold the asset from the portfolio for $1.25 million and did not issue him capital common stock. Now, he did, as the complaint alleges, he did confront, if that's the correct word, have a discussion with Mr. Meacham, one of the principals of the firm. Mr. Meacham reviewed the situation and decided that perhaps he hadn't received enough common stock for the existing farmland management accounts and gave him some additional stock. But he's received no stock for the farmland commitments that TIAA-CREF has continued to have. There's no dispute under the well-pleaded facts that there still is this business relationship between TIAA-CREF and Cozad. The second theory, I guess I should address. The argument against this is that the prefiguratory language in the first paragraph, the first sentence of paragraph four, says that he's not going to get a salary and his compensation is going to be tied to commissions and fees received. Plaintiff remit's position is that that sentence is correct. It tells everybody why he doesn't get a base salary. But then each of the subsequent paragraphs define the method of compensation for each of the various components, for TIAA-CREF, for TRS, for other general accounts, for production accounts, and for the bonus pool. So he submits that the trial court committed error by not recognizing that he had pleaded the cause of action that allowed that the defendant should be required to answer. This isn't suggesting he automatically wins the case. We're here because he wasn't able to go forward. He wasn't able to pursue discovery. I should also add here, as pleaded in the complaint, and I think as the record shows, he's asked for financial records that underlie these claims, both under the contract, which says he's entitled to an accounting, but also seeking discovery. And he's been denied in every respect. When he goes to the firm, he's told, no, you've got a lawsuit. When he goes to the court, he says, no, you're not entitled to discovery. Was there a motion to compel? There was not a motion to compel. There was a motion seeking discovery that was denied. Okay, so plaintiff requested discovery? Yes, and it was denied. The motion was denied. It was opposed by the defendant and denied. But the denial of the court's order denying the request for discovery, that's not on appeal? No, that would have been an interlocutory issue. It also could have been brought in this appeal as well. I guess I think it would have been a pendant claim. But I just wanted to make sure that it's not. It is not. We have not briefed or argued that issue. I just point that out to the extent that there's criticism of the plaintiff for the detail of fact that he should allege. That's part, I think, of the discussion in the case. The second theory was regarding an account, a preexisting account in 2006 for which he had received no compensation that he discovered after he entered into the 2007 contract. And that is in 1993 there was a consulting contract in which Kosad and Ken Bruce and Plaintiff Vermen were parties. Ken Bruce had ties to the teacher retirement system, to the Ohio teacher retirement system, and the Colorado Municipal Employees Retirement Plan. And those accounts, farm management's accounts, were brought to Kosad. Under the agreement, Vermen was to receive 8%. Bruce was to receive 12%. And they were identified in Exhibit A. And to the extent that Bruce brought additionals, the contract was to be amended and include Exhibit A. Now, of course, 2007 has the language, the general language, that all prior agreements are superseded. And this is now the only agreement. Although it does have language in Paragraph 4D which references prior accounts, accounts prior to 2006. Plaintiff Vermen alleges in his complaint that he found out about Cook County. He was not aware of the Cook County farmland investments. And, again, he went and had a discussion with Mr. Meacham and said, hey, this isn't right. I'm entitled to compensation for this client portfolio. And, as a matter of fact, Meacham did give him some compensation but did not give him the compensation that he was entitled to. What does the agreement say about a plaintiff's right to an accounting? Under what circumstances and what happened here? What's alleged to have happened here in terms of a request for an accounting? Well, all I can tell you is what I've done, and that's not part of the record, and I don't feel comfortable doing that. No, just simply in terms of the pleadings. Oh, in the pleadings. What do we know about that? Well, the pleadings indicate that the plaintiff has asked for an accounting of all compensation that should be due to him an accounting regarding any bonuses that have been paid, and he's been told that he's not going to get that. But the source of the right to the accounting, is that the 07 agreement? Yes, it's in the 07 agreement. And what does it say about the plaintiff's right? I knew you were going to ask me that. I should have it at the tip of my finger here. Exhibit A has a list of clients and prospects and individual accounts, with respect to which employees shall be eligible to pay compensation in the event COSAD collects asset management fees from such clients or receives commissions from the sale of insurance or securities to such clients. COSAD and employees shall meet from time to time to review and update in good faith the client prospect list. That's the language of the agreement. Counsel, what's your understanding of the court's grounds for denying further discovery? That if we got a successful complaint on file, a discovery would be appropriate. And I believe that was the defendant's position as well. Because we have not been able to get, in defendant's purview, a successful complaint on file,  I think I'll address what I think the defendant's arguments are. Mr. Desmond will correct me on the Cook County. One, Ken Bruce brought that account, not Jim Bermette. Therefore, it's not his account. It's COSAD's account brought by Ken Bruce. Two, even if it is attributed to Jim Bermette as an employee account that he brought, it's too bad. It's under the 93 agreement, and that is barred by the 2007, the language of the 2007 agreement. The production bonus breach is under paragraph 4D. That last argument was under paragraph 4C of the contract. This is for Justice Connect, just so I make sure. Bermette contends that COSAD failed to pay him 25% of all fees generated by COSAD accounts for those originated before July 31, 2006, and 50% of all fees for accounts originated after July 31, 2006. Their argument is, the defense argument is, that we haven't explicitly identified the accounts. Again, our position is we haven't been able to review our accounts. The position that Bermette has is that it's not equitable to allow the defendant to breach the contract and then stand on the position that you're not allowed, one, to do the review of your clients, that the contract says you're allowed to review, and two, even if you file a lawsuit, you're not entitled to have discovery. The Ford's theory is under paragraph 4E of the contract, and here Bermette claims that COSAD failed to pay Bermette bonus compensation, despite similarly situated employees receiving bonuses after 2007. This response included an affidavit by Mr. Meacham who said that there's been no bonuses, and our position has been that that affidavit standing alone doesn't mean anything if we're not allowed to review the compensation records of employees because there are ways to grant a bonus without calling it a bonus, that you can adjust someone's salary, and there's no way that we would know that unless we're allowed to have access to those accounting records. After that affidavit was filed and it was plain that Mr. Meacham was making the assertion that there were no bonuses paid, was there a request made to the court for a deposition of Mr. Meacham for discovery to examine the basis for his statement? Yes, if you look at the transcript of the motion to dismiss and the motion to reconsider, you'll see that that issue was addressed specifically. I think that the judge would grant us, he did it in case he would grant us discovery, and it may be that he would grant us discovery on this particular issue. My memory isn't clear. I know there was one aspect where he indicated he would grant us discovery. That was at the motion to reconsider, but we had determined that we felt that the complaint on its face properly stated cause of action, and we did not accept that extension. I'm not sure I have any other questions. Thank you. Mr. Guzman. Good morning, Your Honor. May it please the Court and those in counsel, I just want to introduce my partner, Jill Anderson, and one of our new associates, Mr. Self, who's in our Springfield office just down the street. It's his first opportunity to appear here. I thought I'd bring him along so he could see the event. I think I should address the discovery questions and the accounting questions first. The record reflects that there was never any discovery sought with respect to the bonus pool. That was a question that was just asked. There was no 191 affidavit requesting discovery before the Court granted the motion to dismiss on the bonus pool claim. Indeed, I've looked through the records. At no point did they ask for any discovery either before or after a case was dismissed on the bonus pool. I want to clear that up. The only discovery on any of the accounts that was requested was a very limited discovery request relating to Cook County, the so-called Cook County account. That request was made and denied on September 5th, 2008, and the Court denied it, saying you're asking for limited discovery in Cook County. The opposing counsel says timing is not an issue. That was me. I said timing was not an issue. Timing never became an issue on our motion to dismiss the Third Amendment complaint. No further request for discovery was made. So it is not accurate, and the record does not reflect, that plaintiffs sought discovery with respect to the TIA accounts. With respect to the production bonus, he was actually given the opportunity to re-plea the production bonus account, but turned it down, relying on the plea. And I'll talk about the production bonus because that's a fairly straightforward one. There's one allegation in the Third Amendment complaint that says that the production bonus was not paid. That's on all the accounts that a plaintiff has with various investors. This is a current employee, an employee that had been there throughout the entire time period, and yet he could not state one fact to support the allegation that he didn't get a production bonus. And you certainly would expect that he would know at least one account he didn't get a production bonus on. I should also point out, with respect to the production bonus, it was never pled on any of the prior complaints. It was only in the last complaint. The same is true with the bonus pool. There's only allegations on information and belief that there was no bonus pool, that he didn't get paid out of a bonus pool. And in the complaint, paragraphs 76 to 79, he says, and he repeats the language of when he's entitled to a bonus under the bonus pool, and he recites the language of the agreement. And the agreement says it's not similarly situated employees. It's not comparable employees. It's if there's a bonus pool for all employees. Again, from 2007 until when he filed the amended complaint, he was a current employee. It's not a large office. You would think he would have some facts to suggest that he didn't get a bonus payment that everyone else received, and yet he hasn't alleged any facts. So the court was correct to dismiss that count under both 2615 and 2619. The court did not mention 2619, but we moved under 2615 for dismissal. And as your honors know, you can affirm on any ground that would support the judge's opinion. We'd ask that you affirm on that ground. So now let me turn to what I think are the two most important counts. The first one is the TIAA account. And you heard Mr. Beckett say that their claim is odd. I think that was his word. I would say their claim is unreasonable, not supported by the agreement. I would say it's absurd. They're sitting here asking to be awarded 80,000 shares of COZAD for new farmland accounts that were not placed with or through COZAD, for which COZAD received no fees and no compensation. That's not even in dispute. The contract can't be read that way for the reasons we articulated in our brief. And I just wanted to point out that they do not want to read the first paragraph of the compensation provision. But it's there, and it says, Employees' compensation hereunder shall be based solely on fees and commissions collected by COZAD from accounts credited to employees as described in this section. And then it goes on to describe the various accounts for which he can get paid if fees and commissions are collected. Now, that really should be the end of it, because we know fees and commissions were not collected after September 30, 2010. That's not in dispute. And I also want to point out the first account, the so-called TIA account. The first sentence defines the account. It says, With regard to any agreement between COZAD or COZAD Westchester Management relating to financial commitments, not by. They keep saying by. It's from TIA. So it says if you want to get paid for TIA accounts, they have to be accounts pursuant to which there's an agreement between TIA and COZAD. And then it goes on and lists three different ways Mr. Vermette could receive a payment. And the one that's at issue, principally at issue, is the one that says there's an additional compensation solely from, not by, from Farmland Commitments, from TIAA or an affiliate. He would get 10 shares for every $1 million. I should point out he actually pleads that he is entitled to 80,000 of those shares through just 2016, because he claims that all these new Farmland Commitments were made not with COZAD or through COZAD or an affiliate of COZAD, but with another entity, entities that we don't know about and we have no control over. So the court was correct in dismissing that account. It was dismissed twice by two trial judges. The first time the judge dismissed it, Judge Defans dismissed it without prejudice. It came up again. No additional discovery was requested strictly on the language of the agreement and the language of the employment agreement and the complaint, this time the Third Amendment complaint. And it was dismissed again, this time with prejudice, because no discovery is needed to resolve that and nor was any discovery requested. So the plaintiff's right to an accounting under the agreement. Yes, I wanted to address that. The plaintiff's right. They keep saying that they're entitled to an accounting under the agreement. The language, I think, that you were asking about is on page 2 of the agreement, where it says you get an accounting with respect only to TC fees. It's the second paragraph at the top of page 2, and it's the only place an accounting is provided for in this agreement anywhere. And they have not asked, they say they've asked for an accounting, but the accounting that they would be entitled to, if any, would be for TC fees. And interestingly enough, they have not alleged a breach of the TC fee provision. They now have said in their pleadings, oh, yes, we did. But you can't find it in the complaint. All they did is say, as they were enumerating various provisions of the employment agreement, they put in an allegation about TC fees as part of the agreement. They also said they also gave allegations about the TRS account, for example, B. But when it came time to allege breaches, they don't allege a breach of that provision. So you can't not allege an unalleged breach you can't have an accounting for, because there's no allegation there's been a breach, and that would be the only accounting you would be entitled to. There is no other provision or basis for an accounting. So I hope that answers that question with respect to accounting. What I was going to say is if the language of the agreement wasn't clear enough with respect to TIA claims, the read that they seek, and here I would cite Foxfield Realty. I think it's the case on point here. If there were two readings, one that would be fair, reasonable, customary, here, our reading, you would get stock if you generated compensation for your employer. Then you adopt that over a reading that would be inequitable, unusual, absurd. They don't use the word odd, but I will. Odd, because we're not talking, and it's not ambiguous. There's no ambiguity here. Both sides point that out. And I would say you heard a fair amount of parole evidence from counsel in his opening remarks. There is no parole evidence allowed here. The agreement is not ambiguous. There is no need for discovery with respect to parole evidence, and they cannot rely on parole evidence. I want to turn to, I believe, the third and final point, which relates to the so-called Cook County account. That account is alleged to have been, he's alleging that he's entitled to compensation for the so-called Cook County account, but he also clearly alleges repeatedly and in every complaint that that account was brought to COZAD by a Mr. Bruce. Based on that allegation and the clear language of 4C, he is not entitled to any compensation for Cook County, period. And with respect to any argument he makes with respect to a statement made, an oral statement made by one of the defendants about entitlement, he doesn't say he was entitled, he doesn't allege that Mr. Mecham said he was entitled to payment under the employment agreement. There is some suggestion, and there's lots of allegations about it, under the consulting agreement. Early iterations of the complaint, he sued under the consulting agreement. That's why there are all those provisions in here. But he dropped that count because of the integration clause in the employment agreement. And he can't bootstrap that now, that claim into the employment agreement, which clearly says he's not entitled to it based on his own plea, his repeated statements of his own plea. Unless your honors have any specific questions, I would just conclude by saying their claim for the TIA stock is unsupported by the agreement, and in any event has been twice rejected by judges and was denied with prejudice on the second try. The same with the Cook County account. And with respect to the bonus pool and production pool claims, those too should be dismissed. We request that the court affirm the dismissals of all the allegations and put an end to this litigation. Thank you. Thank you, Mr. Cuffman. Mr. Beckett. Counsel did not address what the phrase, any form of business relationship with TIA Craft for its affiliate, means. In every other paragraph and every other provision regarding compensation to plaintiff or met, it's tied to the payment of commissions or fees. This paragraph, which is additional compensation, says that that compensation is due so long as there is any form of business relationship. Counsel didn't address that at all. Why is that there? What does it mean? What was the intent of the parties? Plaintiff or met contends that here they're continuing to receive the fruit of this client that I brought to them for now and the future, and I put this provision in there to protect myself regarding these farmland commitments. This isn't about compensation for the future about this farmland portfolio. This is for all the work that I had done up to the time of this agreement. So we ask that you reverse and give us an opportunity to plead and move forward. Thank you, Your Honor. Mr. Beckett, before you get away, I just want to clarify one point with regard to accounting. What about Mr. Cuffman's representation that any accounting language pertains only to the unpledged TCPs? Well, obviously paragraph five, which I read to you, is broader than TCPs. It applies to every client that he has brought to the firm. Thank you. Thank you. A written decision will issue. Thank you.